JOSEPH RIOUX *vs.* PATRICK J. CRONIN & others.
JULIUS M. OHDE *vs.* SAME.

Hampden.    September 27, 1915. — October 15, 1915.

Present: RUGG, C. J., LORING, CROSBY, PIERCE, & CARROLL, JJ.

*Equity Pleading and Practice,* Master's report, Findings of judge, Appeal, Decree. *Evidence,* Presumptions and burden of proof, Failure to call witness. *Estoppel. Husband and Wife. Equity Jurisdiction,* Judgment creditor's bill, To reach and apply equitable assets, Equitable levy on shares of stock in corporation. *Corporation,* Equitable levy on shares. *Uniform Stock Transfer Act. Survival of Actions. Words,* "Receiver."

On an appeal from a final decree in a suit in equity, where the evidence is not reported except as it appears in the findings of a master to whom the case was referred to find the facts, the facts disclosed in the master's report stand as true.

In a suit in equity by a judgment creditor, in which it is sought to reach certain shares of stock alleged to have been transferred by the debtor to his wife in fraud of creditors and to apply the proceeds of the shares to the payment of the plaintiff's judgment, where a master to whom the case was referred to find the facts did not make an unequivocal finding upon this issue, which was raised by the pleadings, but sufficient facts appeared by his report to enable the trial judge to reach a conclusion upon this question of fact and the report in effect stated all the material evidence on the point, it was *held,* that there was no occasion to recommit the report to the master, and that a motion to recommit for the purpose of having the master make the required finding was denied rightly.

Where a suit in equity was heard by the trial judge upon a master's report alone, this court upon an appeal receives the case as to the facts and the inferences to be drawn from them in the same way that it came to the trial judge.

In a suit in equity, where the burden of proof was on the plaintiff to show that a certain transfer made by the defendant was in fraud of creditors, it was *said,* that, although mere disbelief of testimony introduced by a defendant does not supply the place of affirmative evidence for the plaintiff, yet the testimony of the defendant may be so inherently improbable as to warrant a presumption that affords affirmative evidence of fraud. In the present case, where the only evidence was contained in a master's report and the defendant was the only witness for himself, it could not be said that his statements were so improbable as to raise such a presumption.

In a suit in equity by a judgment creditor to set aside a transfer of property by the debtor to his wife alleged to have been made in fraud of creditors, where the case was heard by the trial judge upon a master's report alone, and the only witness before the master was the defendant debtor himself, whereas if his testimony was true his wife, who was one of the defendants, and his daughter must have known the material facts, the failure to call either of them as a witness affords legitimate ground for an inference adverse to the defendants.

*It seems*, that where a wife permits her husband to take the title and possession of property that belongs to her and to hold himself out to the world as the owner, she is estopped to deny such ownership as against one who gave credit to her husband on the strength of this appearance of ownership.

In a suit in equity by a judgment creditor to set aside a transfer of certain shares of stock by the debtor to his wife as having been made in fraud of creditors, the fact, that five days before the transfer, when the claims of the same creditors were in existence, the debtor conveyed certain real estate to his wife in fraud of creditors, is a material circumstance tending to show fraud in the transfer of the shares of stock five days later.

In a suit in equity by a judgment creditor, who has taken out execution on his judgment which remains unsatisfied, to obtain satisfaction of such judgment out of shares of stock in a corporation alleged to have been transferred by the debtor to his wife in fraud of creditors, where an injunction has been issued prohibiting the transfer of the shares, the provision of the uniform stock transfer act contained in St. 1910, c. 171, § 13, that "no attachment or levy upon shares of stock for which a certificate is outstanding shall be valid until such certificate be actually seized by the officer making the attachment or levy, or be surrendered to the corporation which issued it, or its transfer by the holder be enjoined," is not a bar to the plaintiff's relief, because an injunction has been issued; and this is so whether the suit is a creditor's bill based on the general principles of equity or is a suit to reach and apply equitable assets under R. L. c. 159, § 3, cl. 7, 8.

In such a suit the plaintiff by the issuing of the injunction has acquired a lien upon the shares of stock which survives the death of the debtor, who was the principal defendant, and such lien can be enforced against the claim of the administrator of the estate of the debtor who has been made a defendant in the suit, he having taken the property of his intestate subject to the lien.

In the same suit it was *held*, that under the provision of St. 1913, c. 305, that "no attachment of property, real or personal, shall be so dissolved [that is, by the death of the debtor] upon that part of the property which the debtor had alienated before his decease," which took effect on the day that the suit was brought and therefore applied to the injunction issued in it, the lien was preserved because it attached to property which the debtor had transferred before his death.

In the same suit, it was *said*, that the decree properly ordered the holder of the certificate of shares of stock subject to the lien of the injunction to transfer the certificate to the officer of the court appointed to sell it for the purpose of applying the proceeds to the satisfaction of the plaintiff's judgment.

In the same suit, it also was *pointed out*, that the person appointed by the court to receive and sell the certificate of shares of stock should be called a "commissioner" or a "special master" rather than a "receiver."

RUGG, C. J. These two suits in equity, each brought by a separate judgment creditor of Patrick J. Cronin, come before us

by the defendants' appeals after final decrees for the plaintiffs entered upon the findings of a master. The evidence is not reported except as a part of it appears in the master's findings. The facts disclosed in the master's report must stand as true. *Cook* v. *Scheffreen,* 215 Mass. 444.

The finding of the master to the effect that the conveyance by Patrick J. Cronin of real estate in Holyoke to his wife, Ellen Cronin, was without consideration and intended to delay, defeat and defraud creditors and void, is not attacked and must be accepted as true. The facts narrated in the master's report rendered this conclusion inevitable.

The master did not make a definite finding upon the point whether the shares of bank stock in the Springfield National Bank were transferred by Patrick J. Cronin to his wife in fraud of creditors. Under a rule to find the facts it was the master's duty to make an unequivocal finding upon this point which was put in issue by the pleadings. But the motion to recommit for the purpose of making this finding need not have been granted provided enough appeared upon the face of the report to enable the court to reach a conclusion. We are of opinion that the report contained sufficient facts to warrant a satisfactory decision.* It is in effect a statement of all the material evidence upon the point.

---

* The master's report contained the following findings:

"He [Patrick J. Cronin] claimed that he transferred the bank stock to his wife, because of the advice of a clerk in the bank and because it was his wife's money with which he had purchased the stock in his name. He testified that this money was the savings of his earnings, made by his wife; that his wife had turned these savings over to his daughter, to purchase these shares of stock; that the money saved by his wife, from his wages turned over by him to her, had been put in the bank by her in her own name; that their daughter, an employee of the said Springfield National Bank, bought these shares of stock with this money at their request; that the stock was put in his name with the knowledge and assent of his wife; and that it was bought two or three years previously.

"The evidence in regard to the shares of the capital stock of the Springfield National Bank was very meagre and unsatisfactory. The answer of the defendant bank stated that on December 11, 1912, the defendant, Patrick J. Cronin, was the owner of ten shares of the capital stock of the said Springfield National Bank, that on that date he transferred the said shares of stock to his wife, Ellen D. Cronin, through Ralph P. Alden, and that the said shares have since stood in her name. The only evidence on the matter of this transfer

As the cases were heard by the judge * upon the master's report alone, this court receives the cases as to the facts and the inferences to be drawn from them as did the Superior Court judge. *Harvey-Watts Co.* v. *Worcester Umbrella Co.* 193 Mass. 138. The power and duty of the court to draw inferences from facts found cannot be disputed. *Fairbanks* v. *McDonald*, 219 Mass. 291, 297.

The plaintiffs allege that this stock was conveyed fraudulently. The burden is on them to prove that allegation. Mere disbelief of the testimony offered by the defendants, when that is the only evidence, is not affirmative proof and does not establish the fraud nor sustain the burden of proof resting on the plaintiffs. The cases then would stand as if there were no evidence. Nevertheless the testimony, although not worthy of credence, might be of such character as to lead to the conclusion that if the transaction were honest such testimony would not have been presented, and thus might tend to support the affirmative burden resting on the plaintiffs. But, not having seen the witness, Patrick J. Cronin, nor observed his manner of testifying, it cannot be said that the state-

---

came from the defendant, Patrick J. Cronin. He admitted the transfer of the shares of stock, but denied that he had any interest therein, and claimed that they belonged to his wife, because they had been purchased with her money. If the shares of stock were in reality her property, under the facts stated, though standing in his name, their transfer was not fraudulent or void, and was not intended to delay, defeat or defraud his creditors. If, however, the shares of stock belonged to him, under the facts as stated by him (hereinbefore referred to), then their transfer was fraudulent and void, and was intended to delay, defeat and defraud his creditors.

⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅

"I find, if the said shares of the capital stock of the Springfield National Bank standing in the name of the defendant, Patrick J. Cronin, were his property, under the facts stated by him, that the transfer of said shares of stock by him to his wife, as before stated, was fraudulent and void, was without consideration, and was intended by him to delay, defeat and defraud the plaintiff and another creditor; but if the said shares of stock, under the facts stated by him, were the property of his wife, although standing in his name, I find that the transfer to her was proper, was not fraudulent or void, and was not intended to delay, defeat or defraud the plaintiff or any other creditor. I further find that the legal title of the said shares of stock was in her husband with her knowledge and assent."

* *King*, J.

ments made by him were so inherently improbable as to afford presumptive evidence of fraud. He alone testified. If his testimony was true, his daughter and wife both knew material facts concerning the purchase of the stock out of the savings of the wife. The wife was a party to the suits. Neither of these was called as a witness, nor is any explanation offered for their failure to testify. Considering their kinship and interests, the fact that they were ·not called affords legitimate basis for an inference adverse to the contention of the defendants. *Howe* v. *Howe*, 199 Mass. 598. *Buckley* v. *Boston Elevated Railway*, 215 Mass. 50, 56. *Chandler* v. *Prince*, 217 Mass. 451, 458.

Moreover, it is found as a fact that the plaintiff Ohde, having made specific inquiries at the bank, relied to some extent upon the apparent ownership of the bank stock by Patrick J. Cronin in becoming his creditor. The general trend of authority is that, where a wife vests her husband with the title and possession of property and permits him to hold himself out to the world as the owner and others give him credit on the strength of this appearance of wealth, she is estopped to deny as against such creditors to the extent of their debts that he was the owner.*

The real estate was conveyed to the wife in fraud of creditors of the husband on December 7, 1912. That is a fact in the cases. The transfer of the bank stock was made to the wife five days later while substantially the claims of the same creditors were in existence and the same incentive to defraud creditors continued. As was said in *Jordan* v. *Osgood*, 109 Mass. 457, 461, "Another act of fraud is admissible to prove the fraud charged only where there is evidence that the two are parts of one scheme or plan of fraud, committed in pursuance of a common purpose." *Commonwealth* v. *Dow*, 217 Mass. 473, 480. *Commonwealth* v. *Farmer*, 218 Mass. 507, 512. That principle is applicable to the cases at bar.

Under all these circumstances we draw the inference from the evidence reported that Patrick J. Cronin was the owner of the

---

* *Humes* v. *Scruggs*, 94 U. S. 22, 27. *Mertens* v. *Schlemme*, 2 Rob. (N. J.) 544, 550. *McCormick Harvesting Machine Co.* v. *Perkins*, 135 Iowa, 64, 68. *Warner* v. *Watson*, 35 Fla. 402, 421. *Laing* v. *Evans*, 64 Neb. 454, 461. *McGovern* v. *Knox*, 21 Ohio St. 547. *Pierce* v. *Homew*, 142 Ind. 626, 631. *Hopkins* v. *Joyce*, 78 Wis. 443. See *Hutchins* v. *Mead*, 220 Mass. 348, 349, and *Briggs* v. *Sanford*, 219 Mass. 572, 576.

bank stock and that the transfer to Ellen J. Cronin was in fraud of creditors.

The bill in each case alleges that the plaintiff has recovered judgment in an action at law against Patrick J. Cronin, which is unsatisfied. The bill of Rioux alleges in terms that execution has issued and has been returned wholly unsatisfied. This averment appears to be admitted and is found in substance to be true by the master. The bill of Ohde does not in terms allege that execution issued on the judgment, but that fact is found by the master. The suits are brought to cause stock in the Springfield National Bank, standing in the name of Ellen Cronin but averred to have been transferred to her by Patrick J. Cronin in fraud of his creditors, to be used so far as necessary for the payment of these judgments and executions. The Springfield National Bank, Patrick J. Cronin and Ellen Cronin are made parties defendant. The suit of Rioux was filed on March 19, 1913, and that of Ohde on May 24, 1913. An injunction was issued in the Rioux suit on March 20, 1913, and in the Ohde suit on June 18, 1913, restraining all the defendants from transferring any of the shares of stock. All the defendants appeared and answered. The defendant Patrick J. Cronin died on November 2, 1913, after having testified before the master. The administrator of his estate appointed on May 15, 1914, has appeared and contends that, if the shares of stock were the property of Patrick J. Cronin, they should be delivered to him for administration according to law.

Certificates of stock in the Springfield National Bank were issued in the name of the defendant Ellen on December 11, 1912. Hence, St. 1910, c. 171, known as the uniform stock transfer act, which took effect on March 5, 1910, by §. 23 applies to it. It is provided by § 13 of that act, "No attachment or levy upon shares of stock for which a certificate is outstanding shall be valid until such certificate be actually seized by the officer making the attachment or levy, or be surrendered to the corporation which issued it, or its transfer by the holder be enjoined." As injunctions were issued against the transfer of this stock, the plaintiffs are not barred by the provisions of that act. Whatever may be the nature of the present proceedings, whether under general principles of equity or under the statute to reach and apply, there was ample authority in the court to issue injunctions to secure under the uniform

stock transfer act rights which creditors, execution or otherwise, might have had difficulty in acquiring. R. L. c. 166, § 1.

The question arises, therefore, whether the plaintiffs have acquired a lien upon the shares of stock which survives the death of the principal debtor and which the creditor can enforce under these circumstances.

The mere filing of a bill to reach and apply, under R. L. c. 159, § 3, cl. 7, 8, property of the debtor to the payment of a creditor's claim which has not been reduced to judgment, creates no lien in favor of the creditor. That was decided in substance in *Fish* v. *Fiske,* 154 Mass. 302. The filing of such a bill under the statute, accompanied by the issuance of an injunction, does create a lien in favor of the creditor. *Snyder* v. *Smith,* 185 Mass. 58. The cases at bar differ from each of these cases. The plaintiff in each case had reduced his claim to judgment on which execution had issued and was unsatisfied.

The distinction between creditors' bills, and the relief afforded under R. L. c. 159, § 3, cl. 7, 8, which does not fall under any preexisting head of equity, often has been alluded to. *Stockbridge* v. *Mixer,* 215 Mass. 415, and cases there collected.

The statement in the master's report that these suits are brought under the statute means no more than a narration of what was assumed to be the law.. The real nature of the suits must be determined from their form and substance and the relief sought. But since an injunction issued in each case against the transfer of the stock, it is not necessary to decide whether these suits are creditors' bills under general principles of equity to enforce the levy of an execution, or are statutory suits to reach and apply. In either case the result is the same.

If they are creditors' bills, these are the governing principles: The bringing of a suit by a judgment creditor, whose execution is unsatisfied, to reach and apply property of the debtor not susceptible of seizure at common law on the execution, is the commencement of a levy on the execution. Resort to equity for the purpose of enforcing the collection of an execution was adverted to in *Parkhurst* v. *Almy, ante,* 27, as a well recognized branch of equity. It formed the basis of that decision.

It has been decided in numerous cases that an execution creditor who had acquired no lien by his judgment or execution, never-

theless does create a lien in his favor so as to give him a legal prefer-
ence, by filing a bill in equity for the collection of his judgment
and execution. As was said by Chief Justice Fuller in *Metcalf* v.
*Barker,* 187 U. S. 165, at page 172: "Doubtless the lien created by
a judgment creditors' bill is contingent in the sense that it might
possibly be defeated by the event of the suit, but in itself, and so
long as it exists, it is a charge, a specific lien, on the assets, not
subject to being divested save by payment of the judgment sought
to be collected. The subject was fully discussed and the effect of
bankruptcy proceedings considered by Vice Chancellor Sandford
in *Storm* v. *Waddell,* 2 Sandf. Ch. 494, which has been so repeat-
edly recognized with approval as to have become a leading case."
*Miller* v. *Sherry,* 2 Wall. 237. *Lynch* v. *Johnson,* 48 N. Y. 27.
*Freedman's Savings & Trust Co.* v. *Earle,* 110 U. S. 710. *In re*
*Benz,* 134 C. C. A. 26, 30. The soundness of this principle was
recognized in *Snyder* v. *Smith,* 185 Mass. 58, at page 63. A cred-
itor's bill of this sort can be maintained by a single creditor
without joining such others as may desire to join, as generally is
required in creditors' bills. *Pettibone* v. *Toledo, Cincinnati & St.*
*Louis Railroad,* 148 Mass. 411, 417.

The lien thus acquired was not dissolved by the death of Patrick
J. Cronin. Doubtless the policy of the statute law has been, and
still is in most cases, that all property of a deceased person should
come to the hands of the executor or administrator, to be admin-
istered equally for the benefit of all creditors. *Newburyport Insti-*
*tution for Savings* v. *Puffer,* 201 Mass. 41. This applies to property
attached directly or by trustee process, even though fraudulently
conveyed or concealed. R. L. c. 167, § 112. *McIlroy* v. *McIlroy,*
208 Mass. 458, 465. But this statute by its terms does not apply
where the property actually has been taken or seized on execution.
R. L. c. 177, § 57. The commencement of a creditor's bill for the
collection of an execution is the first step in its levy by equity.
As was said in *Miller* v. *Sherry,* 2 Wall. 237, at page 249, the
commencement of the suit amounts to an "equitable levy," and
in *Freedman's Savings & Trust Co.* v. *Earle,* 110 U. S. 710, at
page 717, "The filing of the bill, in cases of equitable execution, is
the beginning of executing it." It does not matter whether the
levy has been commenced at law or in equity. If the property
actually has been subjected to its lien, then it is not dissolved

by death of the debtor. It follows that under such circumstances death of the principal debtor does not put an end to the lien.

If the present are statutory suits to reach and apply under R. L. c. 159, § 3, cl. 7, as amended by St. 1910, c. 531, § 2, then by the granting of the injunction each plaintiff made an equitable levy upon the stock and acquired a lien thereon. *Snyder* v. *Smith,* 185 Mass. 58. Therefore, it comes within the express terms of St. 1913, c. 305, which took effect on March 19, 1913, the day when the earlier of these two suits was instituted, and which, therefore, governs the rights of these parties. It there is provided that no attachment of real or personal property shall be dissolved by the death of the debtor "upon that part of the property which the debtor had alienated before his decease." If it be held that the plaintiffs by filing their bills acquired no higher right than an equitable attachment, it would be preserved under the terms of this statute, because it relates to property which the deceased had transferred before his death.

The decree in the Rioux case rightly directs the holder of the certificate or certificates of stock to transfer them to the officer of the court appointed to make sale of them to satisfy the plaintiffs' claims. Thus questions of difficulty which otherwise might arise as to more than one outstanding certificate representing the same shares of stock (see *Parkhurst* v. *Almy, ante,* 27) are avoided.

A word needs to be said about the form of the decree. The person appointed to receive the certificate or certificates of stock and make sale of the same is termed "receiver" in each decree. The correct word to use in describing an officer appointed by the court simply to make sale of property is "commissioner" or "special master" rather than "receiver." Each decree is to be modified by the substitution of the word "commissioner" for "receiver" wherever it occurs. As thus modified, each decree is affirmed with costs.

*So ordered.*

The cases were submitted on briefs.

*J. O'Shea,* for the defendant Ellen Cronin.

*N. P. Avery,* administrator of the estate of Patrick J. Cronin, for himself as such administrator.

*H. A. Buzzell,* for the plaintiff Rioux.

*R. W. Ellis, E. H. Brewster & T. W. Ellis,* for the plaintiff Ohde.