EDWARD L. PICKARD *vs.* ANDREW M. CLANCY & others.

Middlesex.    January 20, 1916. — October 17, 1916.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Equity Jurisdiction,* Judgment creditor's bill, To set aside conveyance fraudulent against creditors. *Fraud,* As against creditors. *Judgment. Equity Pleading and Practice,* Master's report, Master's essential error as to admission of evidence, Decree, Amendment. *Evidence,* Competency.

In a suit in equity by a judgment creditor to set aside a conveyance made by the judgment debtor to his wife as fraudulent against creditors, it was *held* that the record of the judgment against the defendant debtor properly was admitted in evidence, and that, whether the judgment was conclusive as to the defendant

wife of the debtor, who was not a party to the action in which it was obtained, did not matter, because she introduced no evidence to impeach or contradict it.

In the case above described it was found by a master that the defendant wife received large sums of money from her husband with knowledge of his fraudulent purpose to cheat his creditors and knowing that he gave her the money to prevent his creditors, whom he had wronged, from obtaining rightful possession of it, and that the money so received by her was commingled with her own, and it was *held*, that a ruling, made by the master at the request of the plaintiff, that the burden was on the defendant wife to prove what part of such mingled property lawfully was hers although she had no actual or constructive knowledge of such fraud, was immaterial and that it did not matter whether this ruling was correct or not.

In the same case it was *held* that the evidence reported warranted findings of the master, that the real estate and some of the personal property mentioned in the plaintiff's bill were held by the defendant wife in fraud of her husband's creditors, that they were purchased with funds given her by her husband to secure them from his creditors, and that, knowing his purpose, she purchased with this money and some of her own, which could not be identified, the designated real estate and personal securities.

In the same case the plaintiff introduced in evidence before the master the testimony of the defendant debtor given in a criminal trial, in which he was convicted of obtaining money by the fraudulent buying and selling of grocery stores, and the defendant wife objected and excepted to the master's making use of this testimony to her prejudice for the purpose of showing the receipt of money from her husband. The master's report showed that this testimony was used by the master as the basis of findings made by him against the defendant wife. *Held*, that, although exceptions to the rulings of a master as to the admission of evidence will not be sustained unless a material error detrimental to the excepting party is shown, yet in the present case the testimony of the defendant debtor at the criminal trial was used wrongly against the defendant wife to establish the essential facts that she received money from her husband which belonged to his creditors and that she accepted it with full knowledge of her husband's fraudulent purpose, and that this was so highly prejudicial to the defendant wife that the exception must be sustained and there must be a new trial.

A decree in a suit in equity must be limited to such matters proved or admitted at the trial as are alleged in the bill.

In a suit in equity by a judgment creditor to set aside certain conveyances of real estate and certain transfers of personal property purchased by the wife of the judgment debtor with money of his creditors from whom he wrongfully had obtained it, if a decree for the plaintiff goes beyond the allegations of the bill as well as beyond the evidence and, in addition to ordering a sale of the property mentioned in the bill, orders also the sale and application of other property not mentioned in the bill, and further orders a personal judgment against the defendant wife of the debtor for any balance found to be due to the plaintiff after the application of the proceeds from the sales ordered, no such relief being prayed for in the bill, the decree is bad.

Where a decree in a suit in equity is bad in purporting to grant relief not prayed for by the bill, the question whether the plaintiff should be permitted to amend his bill is for the trial court upon a rehearing of the case.

In ordering a new trial in the creditor's suit above described, it was *said*, that, if at the new trial substantially the same findings should be made, the approximate amount of money given by the judgment debtor to his wife should be found and that it also should be found how much of this money went into the fund with which the property sought to be applied to the satisfaction of the plaintiff's judgment was purchased.

CARROLL, J. This is a suit in equity against Andrew M. Clancy, Mary H. Clancy (his wife) and Richard A. Murphy, to reach and apply the interest of Clancy in certain real estate, the record title to which is in the name of Mrs. Clancy, which was paid for in whole or in part by him and conveyed to her, to defeat, delay and defraud his creditors; also, to reach and apply his interest in certain mortgage notes so held by her. Murphy was defaulted and the appeal of Andrew M. Clancy was waived. The plaintiff recovered a judgment against Murphy and Andrew M. Clancy in an action at law. We treat the bill as a creditor's bill under the general principles of equity. *Rioux* v. *Cronin,* 222 Mass. 131.

The master found that Clancy from 1899 until he was indicted in 1903 was engaged with Murphy in the fraudulent buying and selling of grocery stores. In February, 1905, he was sentenced to the State Prison, and there remained until January, 1910. From 1899 to 1903 he received several thousand dollars from these fraudulent sales, (how much was not ascertained,) a substantial amount of which was placed in the control of Mrs. Clancy to secure it from his creditors. The real estate and personal property in question were purchased with this money, which had been intermingled with her own and deposited in the bank in her name. The amount of her bank deposits April 1, 1913, represented to "some extent these moneys received from her husband. . . . The value of the property so purchased amounted to a sum greater in value than the plaintiff's judgment." There was a decree for the plaintiff.*

1. The master admitted the execution and docket record of the judgment in the case of Pickard v. Clancy and Murphy. This evidence was admissible against both the defendants. Mrs. Clancy now argues that the amount due the plaintiff is less than the amount of the judgment and that, she being neither a party nor

---

* Made by *Morton,* J. · The defendants Clancy appealed, the appeal of Andrew M. Clancy afterwards being waived.

privy to the judgment, it is not conclusive against her. To what extent Mrs. Clancy or her husband, who was one of the defendants in the original action, was bound by the judgment, and what right, if any, she had to impeach it in these proceedings (see *Habib* v. *Evans,* 222 Mass. 480, 483; *Vose* v. *Morton,* 4 Cush. 27; *Inman* v. *Mead,* 97 Mass. 310; *Tracy* v. *Goodwin,* 5 Allen, 409; *Fall River* v. *Riley,* 140 Mass. 488; *Finneran* v. *Leonard,* 7 Allen, 54) were questions not raised at the hearing, and are not now open to the defendant. `The record of the judgment was admitted properly and no evidence was offered on the part of Mrs. Clancy to impeach it. We do not consider the testimony of Clancy (which was offered and excluded, to wit, that he did not owe the plaintiff anything), was offered for any purpose other than to show that the judgment against him was not valid.

2. Mrs. Clancy received large sums of money from her husband. It was found that she received them with knowledge of his fraudulent purpose to cheat his creditors; she knew that in passing over to her the receipts of his wrongdoing he did it for the purpose of preventing his creditors, whom he had wronged, from obtaining rightful possession of the money. This money was commingled with her own. The master ruled at the request of the plaintiff, that if "Mrs. Clancy mingled her own funds with those of her husband, given to her without consideration, even though she had no actual or constructive knowledge of such fraud, the burden is upon her to show what part of such mingled property is lawfully hers." Inasmuch as the fact was established that she was a party to her husband's fraud, that she participated in the scheme to place the money beyond the reach of his creditors and mingled this money with her own, and with the joint funds purchased the real estate and mortgages described in the master's report, this ruling was immaterial, even if it were inaccurate, which we do not intimate. See *Newton Rubber Works* v. *De Las Casas,* 182 Mass. 436.

3. On the report being recommitted to the master to set forth all the circumstances in addition to those already stated, showing the wife's knowledge of the husband's fraudulent intention, the master described in detail the relation of the husband and wife, the sources of her income, her failure to explain "sources of receipts," the various investments, and the influence exercised over

her by Clancy. All of these circumstances are explained at considerable length in the supplemental report. The defendant objected to each one of the findings. Taking all the facts together as found by the master, we think he was right in his conclusion. *Rioux* v. *Cronin,* 222 Mass. 131, 135. *O'Brien* v. *Murphy,* 189 Mass. 353. *Briggs* v. *Sanford,* 219 Mass. 572.

4. Exception seventeen states that the finding showing Mrs. Clancy received rentals from real estate and increased her savings bank account during the years 1910, 1911, 1912 and up to April 1, 1913, the date of the bill, is immaterial. If this is so, this defendant is not harmed. *Newton Rubber Works* v. *De Las Casas, ubi supra.* We think, however, the finding was relevant to the issue and warranted by the evidence.

Exception thirty relates to the finding that all the property mentioned in the report, in addition to that described in the plaintiff's bill, was to be applied to the plaintiff's debts. The master found that the real estate and some of the personal property mentioned in the bill were held by Mrs. Clancy in fraud of her husband's creditors; that they were purchased with funds given her by her husband to secure them from his creditors; that knowing his purpose, she purchased with this money and some of her own (which could not be identified) the designated securities and parcels of real estate. So far as this was a finding based on the evidence supporting the averments of the bill, it was, we think, fully justified.

5. At the hearing before the master the plaintiff introduced the evidence of Andrew M. Clancy in the criminal case. To this the defendants excepted generally, without making a specific request that the evidence could not be used against Mrs. Clancy. Andrew M. Clancy was a defendant as well as a witness at the hearing. On both of these grounds the evidence was admissible. *Williams* v. *Taunton,* 125 Mass. 34. If nothing more appeared, no error was made. The defendants further objected and excepted to the master's using this testimony of Clancy to the prejudice of Mrs. Clancy, and in their objection to the report, called the master's attention to the fact that this testimony was not admissible against the defendant Mary and had no tendency to show the receipt of money from her husband. They also objected to the supplemental report, because this testimony of the husband

was used as evidence against the wife. The report shows the admission of the evidence and that it was used to the injury of Mrs. Clancy. *Cook* v. *Scheffreen,* 215 Mass. 444, 447. The master states that at the trial of the criminal case Clancy testified to the various sales of the stores from 1899 to 1903, inclusive, the amount he received from each sale and the distribution of the proceeds. It was also found that he testified "that he handed a great deal of the money which he obtained from Pickard to his wife, and gave one half of the money which he received from Campbell to his wife." While it does not explicitly appear in the original report that the master relied on this evidence of Clancy in making his findings, it does appear that he was influenced by it, and considered it of importance in passing on the question of the transfer to the defendant of the results of the husband's fraudulent transactions.

In the supplemental report, reference again is made to the evidence of the husband at the former trial, the report showing that he there testified that one-half of the proceeds of the Campbell sale "he gave to his wife," and apparently on this evidence the master bases the statement, "This payment by the defendant to his wife, followed by other large payments, which I have found he gave her, — never having occurred before in her marital life, — must have been supplemented by some explanation on his part as to the source from which the moneys came. There would have been no good reason for the defendant to conceal his purpose in giving the moneys to his wife. In giving the money to his wife, he must have trusted her to that extent, and some explanation must have been given by him to her to account for these unusual proceedings." While exceptions to the rulings of the master in admitting evidence will not be sustained unless a material error detrimental to the excepting party is shown (*Long* v. *Athol,* 196 Mass. 497, 508, and cases cited), we are of opinion, considering the entire report, that this evidence, relating to the very substance of the issue, was used to the prejudice of the female defendant to establish the fact that she received from her husband money which really belonged to his creditors and also that she accepted it with full knowledge of her husband's fraudulent purpose. This evidence was so highly prejudicial to this defendant and so materially affected her rights, that, in the opinion of the majority of the court, there must be a new trial, and this exception is sustained.

6. In the Superior Court a decree was entered confirming the master's report, and appointing a special master to sell the two described tracts of land and an additional tract not mentioned in the bill, also the notes and mortgages described therein in items one, two, three, five, six and eight of the annexed schedule; and, in addition to this, several promissory notes and certain bank deposits of Mary H. Clancy, not referred to in the bill, all of which were to be applied to the payment of the costs and the expenses of the sale and the claim of the plaintiff, amounting to $4,571.92, together with interest from March 28, 1913. The decree also directed that, if the proceeds of the sale were insufficient to meet these claims, judgment for the deficiency was to be entered against Mary H. Clancy.

A decree in equity should follow the proofs and the statements contained in the bill. It is founded on the pleadings, and the relief granted must be in conformity with them. The relief cannot be greater or different from that warranted by the facts stated. The decree in this case goes beyond the pleadings. There is nothing to indicate that any real estate or personal property other than that set out in the bill was fraudulently conveyed, and there is no claim that the third parcel of real estate and the additional notes, as well as the deposits of Mrs. Clancy mentioned in the decree, are so held, or that Clancy has any property right, title or interest therein. See *Hennessey* v. *Preston*, 219 Mass. 61. The frame of the bill contemplates the application of the debtor's interest in specific, definite real estate and personal property in payment of the plaintiff's judgment. The decree is not confined to this allegation; it goes further, and, in addition to ordering the sale of personal property and real estate mentioned in the pleadings, it directs that, if the proceeds from the sale are inadequate, a judgment for the deficiency shall be entered against Mrs. Clancy. The plaintiff nowhere asks for a money judgment or decree against her. The decree, therefore, is improper in ordering the sale of the real estate and personal property not set out in the bill, and in ordering a personal judgment against Mrs. Clancy for the deficiency. If the plaintiff desires to amend his bill, the question of an appropriate amendment is for the Superior Court to pass upon.

7. As there must be a rehearing, it is proper to refer to the fact

that no finding was made showing the approximate amount of money Mrs. Clancy fraudulently received from her husband, nor the amount so received which contributed to the purchase of the real and personal property described in the plaintiff's bill. It is shown that a substantial portion of the proceeds obtained from the sale of the various stores was placed in her possession, that "other large payments" were made to her. From 1899 to 1905 her receipts greatly increased. Her earnings and expenses from 1868 to 1881 were shown. When Clancy began his fraudulent transactions she owned but one parcel of real estate. In 1887, she had less than $500 in the bank, while in January, 1899, she had in various savings banks $5,391.59. In 1910 she had $14,079.59 so deposited and the value of the property purchased with the fund made up in part of her own money and that given her for the fraudulent purpose by her husband exceeded in value the plaintiff's judgment. From these findings we think it could be ascertained, at least approximately, how much money dishonestly was turned over to Mrs. Clancy and what portion of it went into the property described in the plaintiff's bill.

Without intimating what rule of law would be applied where these facts cannot be ascertained at least approximately (if such a case can exist), it is enough to say that, if at the new trial substantially the same findings are made, we think the approximate amount of money given by Clancy to his wife should be found and also how much of this money went into the fund with which the property in question was purchased.

From what has been said we think it unnecessary to pass upon the other exceptions of the defendant.

<em>Decree is reversed, the suit to stand for a new trial.</em>

The case was argued at the bar in January, 1916, before *Rugg,* C. J., *Braley, De Courcy, Pierce, & Carroll,* JJ., and afterwards was submitted on briefs to all the justices.

*G. M. Poland,* (*L. P. Jordan* with him,) for the defendant Mary H. Clancy.

*W. E. Fowler,* for the plaintiff.