NEW ENGLAND OIL REFINING COMPANY *vs.* CANADA MEXICO OIL COMPANY, LTD. & others.

Suffolk. May 13, 14, 1930. — January 12, 1931.

Present: RUGG, C.J., CROSBY, CARROLL, & SANDERSON, JJ.

*Equity Pleading and Practice,* "Special master," Receiver, Parties, Appearance, Answer, Waiver of informalities, Decree. *Equity Jurisdiction,* Receiver, To reach and apply equitable assets. *Constitutional Law,* Due process of law.

A suit in equity was brought by a partnership, in behalf of and for the benefit of a corporation, against certain persons, as trustees under a declaration of trust, to establish a debt of the trustees to the corporation. While such suit was pending, a creditor of the corporation brought a suit against the corporation, the partnership and the trustees under G. L. c. 214, § 3, cl. 7, to establish his debt and to reach and apply in satisfaction thereof such indebtedness of the trustees to the corporation, and the defendants appeared and answered. In the second suit interlocutory decrees were entered, from which no appeal was taken, enjoining the partnership and the corporation from receiving any portion of the judgment debt owed by the trustees, and enjoining the trustees from paying, discharging or assigning any portion thereof, except that the partnership might collect the amount thereof and pay it to counsel for the plaintiffs in the first suit, who was appointed a "special master" for that purpose and who should hold it subject to further order of the court. Thereafter a final decree was entered in the first suit establishing a debt due from the trustees and directing them to pay the amount thereof to the "special master," to be held by him subject to order of the court, such decree further providing that it should "not affect the liability, if any, of any one for moneys of the trust used in improper or *ultra vires* transactions, and is without prejudice to the rights, if any, of the plaintiffs or the special master to enforce such liabilities in other or further proceedings." Subsequently the "special mas-

ter" filed a report in the second suit stating in substance that there were then no remaining tangible assets of the trust in the hands of the trustees, but that certain individuals, who had been or then were trustees, by breaches of trust had wasted and dissipated such assets; and seeking authority to institute and prosecute to final judgment appropriate proceedings to recover from those individuals the amounts of the trust funds expended or lost in the transactions alleged to have been *ultra vires* the trust and a breach of the trust. After a hearing, the judge found that the trustees were unfit to be entrusted with the prosecution of the claims described by the "special master," and that the corporation admitted that it owed to its creditor, the plaintiff in the second suit, a substantial part of the debt alleged by him to be due. An interlocutory decree was entered in the second suit confirming the report of the "special master"; authorizing him to institute and prosecute proceedings at law or in equity against the individuals named by him "to recover from them or any of them individually and personally any funds of the . . . trustees that were expended and lost in or by reason of the transactions" described by him in his report, such proceedings to be in the name of the trustees, or of the corporation, or of the partnership, or in his own name as "special master"; directing the trustees to assign to the "special master" all the trust's rights against such individuals on the grounds stated in the report; and enjoining the trustees from interfering with such proceedings. The second suit then was reported to this court. No evidence nor statement of counsel at the hearing was reported. *Held*, that

(1) The facts stated in the report of the "special master" and in the findings of the judge must be accepted as true;

(2) The individuals against whom actions and suits were authorized by the decree reported were not parties to the second suit in their capacity as individuals, and the mere authorizing of the proceedings to be brought against them was no adjudication against them as individuals;

(3) Such individuals therefore had no such interest in the matter covered by the judge's report as made them necessary parties to the second suit or entitled them to be heard by the judge, and the trustees had no right to interpose objections in behalf of other persons, or in behalf of themselves as individuals, who were not parties;

(4) The trustees having answered without a plea in abatement, there was no merit in a contention that all of them were not joined: general appearance and answer to the merits gave jurisdiction and were a waiver of all precedent informalities;

(5) The "special master," although so designated, must be deemed to be a receiver, and his appointment was appropriate in a proceeding of this nature;

(6) The report of the "special master" was not the interjection of a new party into the suit, seeking additional relief in the guise of that report without amendment to the pleadings, nor was it a pleading; it was merely an appropriate means of conveying information for use of the court;

(7) It appearing that the corporation owed its creditor, the plaintiff in the second suit, at least a substantial part of the amount claimed, and that the corporation was owed a debt by the trustees which was in the form of a judgment standing in the name of the partnership, the court had jurisdiction of the suit under G. L. c. 214, § 3, cl. 7, to reach and enforce such judgment debt due the corporation and to apply it toward satisfaction of the debt owed to the plaintiff by the corporation; and it was further within the general equity jurisdiction of the court, in order to enforce such judgment debt, to reach assets of the trustees represented by the claims against themselves as individuals; and the method of procedure adopted by the judge in the interlocutory decree, looking toward that end, was within the discretionary power of the court;

(8) It was plain from the report of the "special master" and the findings of the judge that there was ample ground for the conclusion that the trustees as such were unfit to prosecute the claims set forth in the special report against themselves as individuals;

(9) Possible defences, under the provisions of the declaration of trust, of the individuals who were to be defendants in the proceedings which the "special master" was authorized to institute, were not germane to the second suit before this court on the report: every defence open under the law would be available to the trustees as individuals if and when they should be brought into court as defendants pursuant to authority granted to the "special master" in the decree;

(10) No constitutional right of the trustees was infringed by the decree reported.


BILL IN EQUITY, filed in the Superior Court on November 4, 1926, and described in the opinion.

Proceedings in the Superior Court are described in the opinion. *Bishop,* J., ordered the entry of the interlocutory decree of December 24, 1929, and thereupon reported the suit for determination by this court.

*J. Noble,* "special master."

*W. G. Thompson,* for receiver of New England Oil Refining Company.

*J. G. Palfrey,* for Canada Mexico Oil Company, Ltd.

*E. F. McClennen,* for Boston Mexican Petroleum Trustees.

RUGG, C.J. This suit was brought on November 4, 1926, to establish a debt amounting to about $141,000 alleged to be due to the plaintiff from the first named defendant, hereafter called the Canada Company, and to reach and apply in payment thereof an indebtedness due to the Canada Company from the other defendants. Concerning

that indebtedness, it is alleged and appears that the defendants composing the firm of Cochrane, Harper and Company, hereafter called Cochrane, on June 30, 1922, brought suit against the remaining defendants as the Boston Mexican Petroleum Trustees under a written declaration of trust, hereafter called the Trustees. That suit has been before this court three times and is reported under the name *Cochrane* v. *Forbes* in 257 Mass. 135, 265 Mass. 249, and 267 Mass. 417. It is alleged in the present bill and not denied in the answers that that suit by Cochrane was brought in behalf and for the benefit of the Canada Company, and that the latter company has no assets which can be attached in an action at law. It was said in 257 Mass. at page 145: " The suit is brought by the plaintiffs in their own behalf and in behalf of and as trustees for the Canada Company." So far as material, that must be assumed to be true for the purposes of the present decision. By that suit a very large indebtedness to Cochrane from the Trustees was sought to be established. By interlocutory decrees of November, 1926, in the present suit, Cochrane and the Canada Company were enjoined from receiving, collecting, assigning or discharging any amount of or any right to their claims against the Trustees, and the Trustees were enjoined from paying, discharging or assigning any amount of or rights touching said claims. By interlocutory decree of March 18, 1927, those earlier decrees were modified to the extent of permitting Cochrane in the suit against the Trustees to recover any sums due and to collect the same, collection and payment to be to John Noble, appointed special master to that end by the court, who was to hold the same after deduction of expenses of that suit subject to the further order of the court. Doubtless " receiver " would have been the correct designation of the officer so appointed by the court, especially in view of powers subsequently conferred upon him, but the term used does not affect the substance of his authority. *Rioux* v. *Cronin*, 222 Mass. 131, 139. In December, 1929, the special master filed his first report. It is there set out among other matters that in the suit of

Cochrane against the Trustees final decree was entered on August 2, 1929, establishing the debt of the Trustees to Cochrane in a sum over $300,000. It is stated further: "Said decree ordered the defendant trustees to pay out of the cash of the trust, to the extent thereof, the said sums established as aforesaid to the special master in this case to be held and applied by him according to the further orders of the court, and directed that execution for the amount of the debt, interest and costs so established should issue to and in the name of the special master against the assets of the trust now or that may hereafter come into the possession of the trustees. An execution issued as directed in said decree has been returned unsatisfied. Said decree contained the following provision: 'This decree shall not affect the liability, if any, of any one for moneys of the trust used in improper or *ultra vires* transactions, and is without prejudice to the rights, if any, of the plaintiffs or the special master to enforce such liabilities in other or further proceedings.'" That report further sets out in some detail the state of the assets of the trust and shows that they are not of great value and are in any event wholly insufficient to satisfy the indebtedness established in the Cochrane suit. It states that at the time when that indebtedness arose, "the assets of the trust, if then liquidated and applied to the payment of the debts of the trust would have been sufficient to pay the debt due to the plaintiffs, as well as all other debts of the trust; and the special master is advised that the funds of the trust would have remained sufficient to pay said debts if they had not been wasted and dissipated by the trustees in various transactions herein alleged to have been breaches of trust." That report states that the present Trustees and other named persons formerly Trustees have taken part in transactions constituting breaches of the trust and will not enforce the individual liabilities of the persons, who have wasted the property of the trust, to restore "the assets of the trust that were wasted and lost by reason of the breaches of trust herein alleged; and that unless this court will give the special master

power to enforce said claims and recover said funds of the trust, there will never be cash assets of the trust that can be reached on execution in the case of Cochrane *v.* Forbes, or available for satisfaction of the debt established in that case, which is sought to be reached and applied by the plaintiffs in this case." The report concluded with a recommendation that the special master be authorized to institute and prosecute to final judgment appropriate proceedings to recover from the named individuals the amounts of the trust funds expended or lost in the transactions alleged to have been *ultra vires* the trust and a breach of the trust. Notice issued of a hearing on the approval and confirmation of this report and the granting of the authority to the special master therein recommended. The attorney for the Trustees filed " Answer of Objection " to this order of notice " for Boston Mexican Petroleum Trust." This answer will be considered in detail in dealing with the questions of law raised. At the hearing on the report the trial judge made findings of fact to the effect that a substantial part of the debt alleged by the plaintiff was due from the Canada Company and its counsel requested that the authority to sue be granted as requested by the special master; that " all of the present Trustees are pecuniarily interested in opposition to the claims set forth in the first report, and for that reason and by reason of their disbelief in said claims referred to in said first report, the proceedings against them individually should be brought by the special master and not by them as Trustees," and that therefore the Trustees were unfit to be entrusted with the prosecution of said claims and that the special master was in every respect a suitable person to be entrusted therewith. The Trustees presented requests for rulings, which were denied. An interlocutory decree bearing the date of December 24, 1929, as modified was entered: (1) Approving and confirming the report of the special master. (2) Authorizing and directing the special master to institute and prosecute to final judgment or final decree any proceedings at law or in equity against the persons named.

considered by him necessary or appropriate, " to recover from them or any of them individually and personally, any funds of the Boston Mexican Petroleum Trustees that were expended and lost in or by reason of the transactions alleged in said master's report to have been *ultra vires* of the Trustees of the Boston Mexican Petroleum Trustees, and a breach of their trust. And the special master is further authorized to bring such proceedings in the name of Boston Mexican Petroleum Trustees, or in the names of Trustees of said trust, or in the name of Canada Mexico Oil Company, Ltd., or in the name of Cochrane, Harper and Company, a copartnership, or in his own name as special master appointed by this court." (3) Continuing previous interlocutory decrees of November, 1926, as modified by the decree of March 18, 1927. (4) Directing the Trustees " to assign to the special master any and all rights and claims that do or may exist in favor of ' Boston Mexican Petroleum Trustees ' against its present or former Trustees named in the receiver's report and any and all of them for the recovery of trust funds that were expended and lost in or by reason of the transactions alleged in said master's report to be *ultra vires* of the Trustees and a breach of their trust; and to sign, seal, acknowledge and deliver to the special master proper and sufficient instruments of conveyance and transfer of said rights and claims." (5) Enjoining the Trustees from interfering in any way with the prosecution of the actions and suits thus authorized.

The trial judge then reported the " case on the bill of complaint, answers, temporary injunction and modification thereof made March 18, 1927, the first report of the special master, the interlocutory decree of December 24, 1929, on said first report (as modified . . .), the answer of the Boston Mexican Petroleum Trustees to the order of notice issued on said first report, my findings of fact and my decision on the rulings of law requested by the defendant."

1. The facts stated in the report of the special master and in the findings of the judge must be accepted as true.

If those stated in the report were disputed at any time, they ceased to be open to controversy after the decree approving and confirming it. The evidence or statements of counsel on which the action of the judge rested are not reported. On this point the usual rule controls. *Summerfield Co. of Boston* v. *Prime Furniture Co.* 242 Mass. 149, 153, 154. *Corkum* v. *Clark,* 263 Mass. 378, 382. It appears, thus, that the execution in the suit of Cochrane against the Trustees issued to and in the name of the special master. He has been the attorney for Cochrane in the previous litigation before this court already referred to. Cochrane has made no objection in the case at bar to the matters here depending. The Trustees are the only ones contesting the validity of the proceedings now reported for decision.

2. There is nothing in the objection urged by the Trustees that persons whose interests are affected are not parties. This objection rests on the manifest fact that the individuals against whom actions and suits are authorized by the decree are not parties to this suit in their capacity as individuals. The Trustees in their capacity as trustees alone are parties to this suit. As individuals in their private capacity they can be made parties only by amendment of the bill and service of process or voluntary appearance. No proper steps have been taken to make them as individuals parties to this suit. *Cochrane* v. *Forbes,* 265 Mass. 249, 255, 256. *McCarthy* v. *William H. Wood Lumber Co.* 219 Mass. 566. *Eaton* v. *Walker,* 244 Mass. 23, 31.

3. In their private capacity as individuals they are not necessary parties to this suit. The rulings, findings and decrees now before us simply authorize an officer of the court to enforce by independent legal proceedings certain obligations alleged to be due from them as individuals to the trust. No adjudication against them as individuals is found on the present record. Every defence will be open to them if and when as individuals they are made defendants in actions or suits authorized by the decree here in controversy. The only question on this branch of the

case is whether an *ex parte* case was made out to warrant the exercise of judicial power to authorize the bringing of actions or suits against them as individuals. Clearly, this was a subject touching which they were not necessary parties.

4. Since the Trustees as individuals are not necessary parties to the present proceeding and no adjudication is made against them, they have no such interest in the matters here reported as entitled them to be heard. The Trustees cannot interpose objections in behalf of other persons, or in behalf of themselves as individuals, who are not parties. They can be heard only as to matters affecting them in their capacity as Trustees. *Ryder* v. *Brockton Savings Bank,* 238 Mass. 52, 57. *Ensign* v. *Faxon,* 224 Mass. 145. *Monroe* v. *Cooper,* 235 Mass. 33, 34. *Horton* v. *Attorney General,* 269 Mass. 503, 514.

5. There is in our opinion no merit in the contention that all the Trustees have not been joined. There was no plea in abatement based on nonjoinder of any Trustees. The ones now alleged to have ceased to be Trustees before this suit was instituted were not necessary parties to this suit, because it was brought only against those alleged to be Trustees and it related solely to the affairs of the trust. No personal service was made upon the Trustees save in a single instance, but service was made, according to the return of the deputy sheriff, upon their attorney. That attorney, in November, 1926, filed an answer to the merits in their behalf as " Boston Mexican Petroleum Trustees." In his " Answer of Objection " filed in response to the order of notice on the first report of the special master, that attorney states that he is attorney of record " for Boston Mexican Petroleum Trustees as such trustees but not individually." He is described in the finding of the judge as " counsel for said Trustees." It appears from the report of the special master that one of the present Trustees, B. Nason Hamlin, is not named as a party to this suit. All the other Trustees are so named and made parties as Trustees. In the " Answer of Objection " filed in behalf of the Trustees it is stated

that B. Nason Hamlin became a Trustee prior to the institution of the present suit. It is manifest that the case has proceeded thus far on the footing that all the Trustees were parties and were represented by counsel. It is too late now to raise any question as to want of parties. Even if that were not so, it would be a matter that could be cured by amendment. *Savage* v. *Welch,* 246 Mass. 170, 182. *Pizer* v. *Hunt,* 253 Mass. 321, 331. General appearance and answer to the merits give jurisdiction and are a waiver of all precedent informalities. *Riley* v. *Brusendorff,* 226 Mass. 310, 312. *Paige* v. *Sinclair,* 237 Mass. 482, 484. It is apparent from the pleadings and proceedings that the attorney was appearing for all the Trustees in their capacity as trustees. It is provided in the declaration of trust that a majority of the Trustees may act in the management of the trust. The Trustees are sufficiently before the court, in our opinion, to warrant the proceedings here under review. Since the Trustees were in court by appearance and answer, they were bound by any proceedings properly had in conformity to authorized practice without service of new process. Notice to their attorney of record was sufficient.

6. It is urged that Allen Forbes ceased to be a Trustee before the present suit was instituted. It is so stated in the "Answer of Objection." He was named as a Trustee in the present bill and in the return of service. The answer of the Trustees also names him as one of them without qualification. No steps have been taken to dissociate him from the case as a defendant Trustee. Whatever may be the fact in this particular, no material error is shown on this record. This argument cannot be supported.

7. The appointment of a receiver, for such the special master must be deemed to be, is an appropriate means for a court of equity to adopt in a proceeding of this nature. *Amy* v. *Manning,* 149 Mass. 487, 489, 491. *Adamian* v. *Hassanoff,* 189 Mass. 194. *Hampden National Bank* v. *Hampden Railroad,* 246 Mass. 404, 407. *Pierce* v. *United*

*States,* 255 U. S. 398, 401, 402.  *New Jersey Lumber Co.*
v. *Ryan,* 12 Dick. (N. J.) 330.

8. The contention that the report of the special master
is virtually the interjection of a new party into the suit,
seeking additional relief in the guise of that report with-
out amendment to the pleadings, cannot be supported.
Other attorneys have from the outset represented Cochrane
in the present suit.  The special master is an officer of
the court charged with duties under his appointment.
That is his only relation to the case at bar disclosed by
the record.  The appropriate method of communicating
progress in the performance of his duties is by report to
the court, and it was within the scope of his duty to make
the recommendations contained in this report as to fur-
therance of the main cause of action in the present suit.
Its design was to enlighten the court in order that thereby
proper judicial action might be taken.  The report is in no
sense a pleading.  It was, however, a matter of public record
on the files of the court.  All parties to the suit, certainly
after the order of notice, were chargeable with knowledge
of its contents.  It was before the court for consideration
and for such action as was demanded by the law in the
determination of the trial judge.  There was a hearing
upon it.  At that hearing the Trustees, having filed their
"Answer of Objection," were fully heard.

9. The original appointment of the special master in
the case at bar was made by decree of March 18, 1927.
That decree was entered by way of modification of earlier
injunctions against the collection and payment of the in-
debtedness alleged in the Cochrane suit against the
Trustees.  He was appointed to receive and hold all that
might be collected or paid in that suit.  There was no
appeal from that decree.  In recognition of the force of
that decree and as an extension of the authority thereby
conferred, when that suit went to final decree establish-
ing the large indebtedness to Cochrane from the Trustees,
that final decree contained a clause to the effect that ex-
ecution for the amount found due should issue to and in

the name of the special master. That decree, although entered in the Cochrane suit, had the effect of putting into the custody of the special master in the case at bar the execution in that suit. To reach and apply the proceeds of that suit was one object of the present suit. The validity of that decree has not been and could not be assailed by the Trustees. They were parties to it. They did not appeal from it. Thereby, as officer of the court, the special master was clothed by operation of law with all the power possessed by the plaintiffs in that suit for the collection of that indebtedness against the Trustees. The present suit was brought under G. L. c. 214, § 3, cl. 7, whereby are authorized " Suits by creditors to reach and apply, in payment of a debt, any property, right, title or interest, legal or equitable, of a debtor, within or without the commonwealth, which cannot be reached to be attached or taken on execution in an action at law." Plainly, the admission by the Canada Company and the finding by the court, that a substantial part of the large indebtedness alleged in the bill is due, is sufficient to satisfy the requirement of the establishment of a debt due to the plaintiff. *Stockbridge* v. *Mixer,* 215 Mass. 415, 418. Respecting an earlier form of that provision, it was said in *Wilson* v. *Martin-Wilson Automatic Fire Alarm Co.* 151 Mass. 515, 518, 519: " The provisions of this act indicate an intention on the part of the Legislature to give the court power effectually to reach and apply every kind of property which cannot be attached or taken on execution. It . . . authorizes proceedings in which there is no other defendant but the debtor, and plainly implies that the court may make all such orders and take such measures as may be necessary to apply the property to the payment of the debt . . . . The act does not purport to point out the modes of procedure, but it authorizes the courts to do certain things which they could not do under their general jurisdiction, and impliedly authorizes them to take any measures analogous to ordinary proceedings of courts of equity which may be necessary or proper to accomplish the work which they are set to do." Whatever relief is appropriate

under general principles of equity is within the scope of such a bill. It is manifest that the property sought to be reached comes within the descriptive terms of the statute. It would be a vain procedure, in view of all the circumstances disclosed, to require the precise value of the debt due to the Canada Company to be ascertained by appraisal or sale before proceeding to attempt to turn into cash the judgment debt against the Trustees, on which apparently its main value depends. The method of procedure on this point was within the discretion of the trial judge. There is nothing to indicate that the action taken was not warranted. By reason of the circumstance that, under the final decree in the suit of Cochrane against the Trustees, execution issued to and in the name of the special master without prejudice to his rights to enforce liabilities for misuse of moneys of the trust in other or further proceedings, there are now incorporated with his other rights those of a judgment creditor against the Trustees, entitled to the relief thereby afforded in addition to his rights under the statute. *Rioux* v. *Cronin,* 222 Mass, 131, 137, 138. *Pusey & Jones Co.* v. *Hanssen,* 261 U. S. 491, 497. *Mason* v. *Pomeroy,* 151 Mass. 164, 168.

10. It seems plain from the report of the special master and the findings of the judge that there was ample ground for the conclusion that the Trustees as such were unfit to prosecute the claims set forth in the special report against themselves as individuals. Specifications on that point were in the report. The Trustees had notice of them. They did not believe that the claims existed. They had failed for a long time to institute proceedings of any nature for their enforcement. The claims were founded on their own individual misconduct. The attitude of mind and the personal interest of the Trustees were sufficient basis for the decision of the judge on this point. It was futile for them to offer to sue themselves if pleadings to that end should be furnished them by others. *Bremer* v. *Williams,* 210 Mass. 256, 258.

11. The decree of December 24, 1929, as amended, was within the jurisdiction of the court. The theory of the

suit at its present posture and comprehended within its original scope is that a debt is due to the plaintiff from the Canada Company, which company through Cochrane owns a debt, now reduced to judgment, against the Trustees, and it is sought to reach and apply that judgment debt due from the Trustees in payment of the debt due to the plaintiff from the Canada Company. The Canada Company, through Cochrane as the judgment creditor of the Trustees, is entitled to reach and apply any legal or equitable asset of the Trustees in satisfaction of that judgment debt. That right is inherent in the judgment. To reach and apply that judgment by implication reaches and applies as ancillary to it the means for its enforcement, including the right to reach and apply the claims of the Trustees in their trust capacity against themselves as individuals. That judgment debt, as evidenced by the execution, has become vested in the special master for the purpose of enforcement and collection because issued to and in the name of the special master against all the assets of the trust and assets thereafter to come into the possession of the Trustees, whether by other and further proceedings, or otherwise. For the purpose of enforcement and collection, that judgment debt is in the hands of the special master as receiver in the case at bar. It is in the custody of the law. It is within the province of the court to enforce the collection of that judgment debt, so far as possible, by appropriate means and to distribute its proceeds among the parties to this suit as justice and equity may require. The Trustees are parties to this suit. They were parties to the Cochrane suit and bound by the decree entered therein. The means adopted by the court through the present decree to enforce the collection of that judgment debt are those conferred upon it by statute and by equity. They are adapted to the desired and legally permissible end. The Trustees by the present decree are subjected to no proceedings not thus vested within the power of the court to authorize. It is incidental to the accomplishment of that desired and legally permissible end to require the

Trustees to make assignment of the claims of the trust against the Trustees as individuals in order that the special master may bring appropriate proceedings to enforce such claims.   There is no incompatibility between the final decree in the Cochrane suit against the Trustees and the present decree.   On the contrary, they are harmonious and directed to the accomplishment of the same ultimate end.

It is not germane to the issues here raised to interpret articles VIII, XII and XIII of the Declaration of Trust under which the Trustees were appointed and have acted. It is only necessary to decide, as we do, that a case against the Trustees as individuals appears to be outlined on the record such as to justify and to require judicial inquiry.   No intimation is here made concerning the merits of that case as it may appear upon trial, or upon the force and effect of the declaration of trust as a defence to the Trustees as individuals to the facts as they may ultimately be found to be.   Every defence open under the law will be available to the Trustees as individuals if and when they are brought into court as defendants pursuant to authority granted by the decree of December 24, 1929.   Nothing here decided is prejudicial to such full and complete presentation of defence by them.   The declaration of trust can be interpreted with more intelligence and justice when the facts as to which it may be invoked are all ascertained.

12. We are of opinion that no constitutional right of the Trustees has been infringed by the actions of the court reported for decision.   The Trustees contend in this connection that their property has been taken without due process of law.   In our opinion this contention cannot be supported.   It is to be noted again that the Trustees are not before the court as individuals but only in their capacity as Trustees.   Questions that might be open to them as individuals are not now open to them as Trustees. Parties alone can raise constitutional questions, and even parties in a case like the present are confined to constitutional questions affecting their rights and interests.   *New*

*York Life Ins. Co.* v. *Hardison,* 199 Mass. 190, 194. *Attorney General* v. *Provident Institution for Savings,* 201 Mass. 23, 25. The Trustees as parties to this suit have had every opportunity to be heard at every stage of the proceedings. It has been found by the trial judge that, by reason of personal interest and disbelief in the merit of the claims owned by the Trustees against themselves as individuals, they are unfit to be entrusted with the prosecution of those claims. That conclusion seems obviously sound. No man can serve two masters whose interests are in conflict. The bill gave the Trustees notice that their debt owing to the Canada Company through Cochrane was sought to be applied in payment of the debt of the Canada Company to the plaintiff. One of the implications of allegations of the bill was that, if necessary to make the judgment debt against the Trustees practically of value, the ancillary interest of the judgment creditor to satisfy his debt by seeking to apply obligations due to the judgment debtors, the Trustees, might also be reached by the plaintiff, and that to that end a receiver might be appointed by the court. When in the course of litigation the purpose to utilize this ancillary interest was formulated, notice was given to the Trustees by the proceedings already narrated. The Trustees were parties before the court from the outset. They had full opportunity to be heard. It is apparent that whatever pleadings they were advised were necessary ·were filed in their behalf, and that they were actually heard touching all matters affecting them in the decree here reported. They are not removed as Trustees. The tangible trust. property is not taken away from them. They still hold everything except the claims against themselves as indi- viduals. They continue in every particular to be and. to exercise the functions of Trustees save only in the single matter of the holding and the prosecution of claims in favor of the trust against themselves as individuals. In all this there is no deprivation of property without .due process of law. There has been full opportunity for hearing. The decision has been rendered according . to

general principles of the law which in the ordinary course of the administration of justice govern rights of parties. This point appears to be controlled by *Duane* v. *Merchants Legal Stamp Co.* 231 Mass. 113, 125–128. We can add nothing to the reasoning there stated, which need not be repeated.

The rulings of law requested by the Trustees in our opinion were denied rightly. They need not be set out but are covered fully by what has been said.

Every argument put forward in behalf of the Trustees has been fully considered. It is not necessary to discuss their contentions in further detail. We are unable to discover any error in the judicial actions reported for our determination.

It follows that the decree of December 24, 1929, as modified by interlocutory decree entered on February 13, 1930, is affirmed.

*Ordered accordingly.*