MARY A. McCARTHY *vs.* WILLIAM C. ROGERS, administrator *de bonis non* with the will annexed, & others.

Plymouth. May 19, 20, 1936. — September 8, 1936.

Present: CROSBY, PIERCE, DONAHUE, LUMMUS, & QUA, JJ.

*Equity Jurisdiction,* To reach and apply corporate stock, To reach and apply equitable assets. *Attachment. Receiver.*

Upon the death of the defendant before final decree in a suit in equity under G. L. (Ter. Ed.) c. 214, § 3 (8) to reach and apply shares of corporate stock of the defendant to payment of a debt owed by him to the plaintiff, an equitable lien acquired by the plaintiff upon the stock through an interlocutory decree and stipulation forbidding their transfer or encumbrance pendente lite was dissolved by reason of G. L. (Ter. Ed.) c. 223, § 116.

Shares of stock subjected to a decree and stipulation, in a suit in equity under G. L. (Ter. Ed.) c. 214, § 3 (8), forbidding the defendant to transfer or encumber them pending further decree of the court, were not "alienated" within the provisions of G. L. (Ter. Ed.) c. 223, § 116, when the defendant in accordance with a later interlocutory decree transferred the legal title thereto to a receiver to execute the voting power thereon.

BILL IN EQUITY, filed in the Superior Court on October 30, 1934, against one Tolman and certain corporations.

The defendant Tolman died while the suit was pending and first the executrix of his will and later an administrator *de bonis non* with the will annexed were admitted to defend. From an interlocutory decree dissolving the "equitable attachment" and from a final decree entered by order of *Donahue,* J., the plaintiff appealed.

. *H. W. Ogden,* (*H. K. Stone* with him,) for the plaintiff.

*W. C. Rogers,* (*B. Berenson* with him,) for the defendant.

QUA, J. This bill in equity was originally brought against F. Harold Tolman to establish a debt due from him to the plaintiff for money lent and to reach and apply in payment thereof stock owned by Tolman in the defendant corporations.

A temporary restraining order was granted forbidding

transfer of the stock, and thereafter a stipulation was filed and "allowed" by the court wherein the defendant F. Harold Tolman agreed not to transfer or encumber the stock until the stipulation should be modified by the court or until a new stipulation should be entered. Still later the court appointed a receiver for the stock, the decree requiring said Tolman "to transfer legal title thereof to said receiver" and authorizing the receiver to exercise the voting power of the stock. There was no appeal from this decree, and its propriety is not in question. For the purposes of this decision it may be assumed that the delivery by Tolman to the receiver of stock certificates in compliance with this decree did transfer to the receiver legal title to the stock. The cause was referred to a master. Before the report was filed F. Harold Tolman died. His executrix appeared, and upon motion by her, the court decreed that the death of Tolman had dissolved "the equitable attachment upon said shares of stock" and that the receiver return the certificates to the executrix "to be administered in due course of law," and discharged the receiver. Thereafter the master's report was filed and confirmed, and the case proceeded to a final decree establishing the debt due from Tolman's estate to the plaintiff, but making no provision for applying the stock to its payment. From the interlocutory and final decrees herein last mentioned the plaintiff appeals. The estate has been represented insolvent, and commissioners have been appointed by the Probate Court.

The decisive question presented and argued is whether the death of the principal defendant, F. Harold Tolman, during the pendency of the suit ended the right of the plaintiff to have the stock applied to the payment of her claim against him.

This suit is prosecuted solely under G. L. (Ter. Ed.) c. 214, § 3 (8). Such a suit is not a creditor's bill under general principles of equity jurisdiction. It is purely a statutory proceeding. *Stockbridge* v. *Mixer*, 215 Mass. 415. *Todd* v. *Pearce*, 291 Mass. 455. Like proceedings under cl. 7 of the same section, it is designed to enable a plaintiff

to subject to the satisfaction of his particular claim without reference to the claims of others specific property of the defendant which cannot be reached to be attached or taken on execution in an action at law. Accordingly the more recent decisions hold, and it must now be deemed to be established, that when a plaintiff in such a suit has obtained a temporary injunction preventing assignment of the property by the defendant debtor, he has acquired an equitable lien upon it, which is good as against other creditors and which is entitled to recognition in bankruptcy proceedings. *Snyder* v. *Smith*, 185 Mass. 58. *Gay* v. *Ray*, 195 Mass. 8, 15. *Rioux* v. *Cronin*, 222 Mass. 131, 137. Earlier decisions possibly tending toward a contrary conclusion were examined and distinguished in *Snyder* v. *Smith*, 185 Mass. 58. G. L. (Ter. Ed.) c. 223, § 116, provides that "An attachment of real or personal property shall be dissolved if the debtor dies before it is taken or seized on execution and administration of his estate is granted in the commonwealth upon an application therefor made within one year after his decease." It is, however, further therein provided that no attachment shall be dissolved upon property "which the debtor had alienated before his decease." The question then is whether the lien which the plaintiff secured by her restraining order and which was continued in effect by the stipulation approved by the court and by the receivership was an attachment or so far partook of the nature of an attachment that it was dissolved and not preserved in consequence of said § 116. This precise question has not hitherto been decided. Many considerations both theoretical and practical seem to require an affirmative answer.

At the outset it should be noted that the statute under which this suit is prosecuted creates no substantive rights. In its relation to specific property it merely provides means for the application of assets of a debtor to the satisfaction of claims whose origin is elsewhere. Its function in this aspect is wholly procedural or adjective in character. In this fundamental regard suits under the statute bear a strong resemblance to the various forms of attachment. They are closely akin to ordinary attachments by trustee

process. *Crompton* v. *Anthony*, 13 Allen, 33, 37. This similarity has been observed in a number of decisions. Thus in *Maxwell* v. *Cochran*, 136 Mass. 73, it was held that a statute which in terms forbade attachment by nonresident plaintiffs of property of a debtor acquired after notice of the warrant in insolvency proceedings forbade likewise the bringing of a bill to reach and apply. In *Geer* v. *Horton*, 159 Mass. 259, 261, it was said that the remedy by bill to reach and apply "stands no higher, as regards the nature of the right which is given to a creditor, than the remedy by attachment of property on mesne process or by trustee process." In *Travelers Ins. Co.* v. *Maguire*, 218 Mass. 360, 362, this court said, "In its essential nature the remedy thus afforded is the same as that given by the trustee process in an action at law. The same general principles have been applied in determining whether the equitable process lies as in deciding whether attachment could be made by trustee process in an action at law." Suits to reach and apply under the statute have long been referred to both in opinions of this court and by the profession generally as "equitable attachments." See for example *Bloch* v. *Budish*, 279 Mass. 102, 105. When the Legislature introduced the same process into probate proceedings by St. 1927, c. 94, § 1, now G. L. (Ter. Ed.) c. 215, § 6A, the words used were, "an attachment may be made by injunction, as in suits in equity." In *Rioux* v. *Cronin*, 222 Mass. 131, as in this case, the debtor died during the pendency of the suits, but the plaintiffs had obtained judgments before bringing the suits which were then before the court, so that those suits operated rather as the first steps in "equitable execution" than as attachments, and the precise question here presented was not decided. However, the court there said, at page 139, that if the plaintiffs "acquired no higher right than an equitable attachment, it would be preserved under the terms of this statute [referring to what is now the last sentence of G. L. (Ter. Ed.) c. 223, § 116], because it relates to property which the deceased had transferred before his death," thus to that extent recognizing the applicability to an equitable attachment

of the statute relating to dissolution of attachments by death.

It is the duty of the court to construe the various statutory provisions touching upon a point in issue with due regard to all of them, "so as to give a rational and workable effect to the whole so far as practicable." *Thacher* v. *Secretary of the Commonwealth*, 250 Mass. 188, 191. "The legislative and judicial tendency has been uniform, to assimilate the forms of process, whether intermediate or final, whereby the remedial functions of our courts of general jurisdiction are exercised." *Hill* v. *Hill*, 196 Mass. 509, 517. It has long been the recognized policy of our law that upon the death of the defendant, the priority given to an attaching creditor shall cease and that the property attached shall revert to the administrator for general distribution. *Kingsbury* v. *Baker*, 17 Pick. 429, 431. *Taylor* v. *Badger*, 226 Mass. 258, 260. *Clabburn* v. *Phillips*, 245 Mass. 47, 50. It would not be giving a rational and workable effect to the statutes here involved nor consistent with established policy or with the probable intent of the Legislature to allow a plaintiff to retain a priority over other creditors of an insolvent estate if he has brought his suit by bill to reach and apply, when he must clearly have been denied such priority, if with equal diligence he had prosecuted the same claim by a writ of summons and attachment or by a trustee writ at law.

There is nothing in the argument that because the interlocutory decree of the court in this instance required Tolman to pass title to the receiver, he had "alienated" the stock, so that the attachment was preserved under the provision contained in said § 116 that no attachment shall be dissolved upon property "which the debtor had alienated before his decease." Tolman transferred no beneficial interest to the receiver. He gave up none of his ultimate rights. He simply obeyed the order of the court. The receiver, whether he had title or only possession, held the stock *in custodia legis* solely for the purposes of the suit and subject to the final order of the court, which would be the same in substance whether or not in the strictly technical sense the receiver

had title. This is not the sort of "alienation" to which the statute has reference, nor is it the sort which the court mentions in *Rioux* v. *Cronin*, 222 Mass. 131.

*Interlocutory decrees affirmed.*
*Final decree affirmed with costs.*