**In re Milton BOROFSKY, d/b/a
G.M.R. Associates, Debtor.**

**Bankruptcy No. 91–41700–JFQ.**

United States Bankruptcy Court,
D. Massachusetts.

April 9, 1992.

---

L. Jed Berliner, Springfield, Mass., for Bergeron Const. Co., Inc.

Peter Stern, Springfield, Mass., for Milton Borofsky/debtor.

## FINDINGS AND CONCLUSIONS

JAMES F. QUEENAN, Jr., Chief Judge.

Bergeron Construction Corporation (Bergeron) moves for relief from the automatic stay in order to foreclose upon stock of Mohawk Greenfield Motel Corporation (the "stock") owned by Milton Borofsky (Debtor) and held by a New Hampshire sheriff as security for a judgment Bergeron obtained against the Debtor. The Debtor opposes the motion on the ground that creation of the security interest was a preferential transfer.

Bergeron has a claim against the Debtor under a construction contract. It brought suit on the claim in Massachusetts. By separate motion in that suit, on February 5, 1990 Bergeron obtained a temporary restraining order in Massachusetts Superior Court restraining the Debtor from "transferring, encumbering, or dissipating" stock which the Debtor owns in Mohawk Green-

field Motel Corporation. This order was continued on February 12 and March 5, 1990 by agreement of the parties, and remains in effect.

Bergeron also pursued the claim in New Hampshire. On April 17, 1990, it obtained judgment for $208,059.80 against the Debtor in the New Hampshire suit. The complaint in the Massachusetts action was amended on August 22, 1990 to add Count V seeking to enforce the New Hampshire judgment. Bergeron received partial summary judgment in the Massachusetts action on March 9, 1991, based upon Court V, for $140,363.30. (The difference in amounts between New Hampshire and Massachusetts is the result of partial payments and the addition of interest since the New Hampshire judgment was entered.)

On May 17, 1991, the New Hampshire court ordered the Debtor to turn the stock over to a New Hampshire sheriff as security for the New Hampshire judgment. This was done on May 31, 1991. The Debtor filed for chapter 11 on July 1, 1991.

■■■ Bergeron asserts that the restraining order obtained from the Massachusetts court in February of 1990 created an equitable lien on the stock. The transfer of the stock to the New Hampshire sheriff on May 31, 1991, it asserts, relates back to the original restraining order. The Debtor argues that a security interest in the stock was not perfected until May 31, 1991, which falls within the ninety day preference period under § 547.

The concept of an equitable lien dates back in Massachusetts law at least to *Snyder v. Smith*, 185 Mass. 58, 69 N.E. 1089 (1904). In *Snyder*, the court held that an injunction against the transfer of property effects an equitable attachment, which if created more than four months before a bankruptcy filing is good against the trustee in bankruptcy. The decision in *McCarthy v. Rogers*, 295 Mass. 245, 3 N.E.2d 787 (1936) is factually analogous to ours. The

plaintiff obtained an injunction preventing the defendant from assigning an interest in stock. The defendant died while the injunction was still effective. Although the defendant's death terminated plaintiff's security interest in the stock, the court held that the injunction created an equitable lien which was good against other creditors and valid in bankruptcy against the trustee.

In both *Snyder* and *McCarthy*, the creditor had proceeded against the debtor in an action to reach and apply. Creditors had for many years sought to enforce judgments through equitable proceedings. In 1851 the Massachusetts legislature supplemented the common law proceeding with a statutory action to reach and apply. *See Foster v. Evans*, 384 Mass. 687, 429 N.E.2d 995 (1981). This statutory action did not require the creditor to previously reduce the claim to judgment or exhaust his legal remedies. *Id.* A creditor's ability to reach and apply shares of stock is now codified in Mass.Ann.Laws c. 214 § 3(7) (Law. Co-op. 1986).[1]

■■■ Actions to reach and apply do not of themselves create a lien on the debtor's property. To create a lien, the creditor must obtain an injunction against debtor disposing of the asset. *Rioux v. Cronin*, 222 Mass. 131, 109 N.E. 898 (1915). Typically, the complaint itself seeks an injunction against the transfer and requests that the property be later sold to satisfy the judgment sought. A complaint to reach and apply must sufficiently describe the property sought to be reached and applied. *Phoenix Insurance Company v. Abbott*, 127 Mass. 558 (1879).

Here, Bergeron's complaint in the Massachusetts suit did not request an injunction against the Debtor transferring his stock in the Corporation. That request was made pursuant to a separate motion filed thereafter. Nor did the complaint or any other pleading ask that the stock be sold to satisfy the judgment sought in the complaint. The Massachusetts suit was thus not a

---

**1.** § 3. The supreme judicial and superior courts shall have original and concurrent jurisdiction of the following cases:

(7) Actions to reach and apply shares or interests in corporations organized under the laws of the commonwealth or of the United States, and located or having a general office in the commonwealth, whether the plaintiff is a creditor or not, and whether the action is founded upon a debt or not.

traditional action to reach and apply. The injunction against transfer of the stock may have cured the initial absence of a "reach", but it did not transform the proceeding into one seeking to "apply" the stock or its proceeds to a judgment. There was no order of the Massachusetts court requiring that the stock be held to satisfy any future judgment. Indeed, if there had been such an order the Debtor would have been prohibited from transferring the stock to the New Hampshire sheriff. I therefore conclude that the Massachusetts action did not effect an equitable attachment of the stock so as to place a lien upon it as security for the requested judgment. And even if it did, that lien was dissolved when the stock was transferred to the sheriff in New Hampshire as security for payment of the New Hampshire judgment.

Thus Bergeron did not obtain a lien on the stock until it was transferred to the New Hampshire sheriff in compliance with the order of the New Hampshire court requiring that the sheriff hold the stock as security for payment of its own judgment. This occurred on May 31, 1991, within ninety days of the Debtor's chapter 11 filing of July 1, 1991. If the Debtor was insolvent on that date, the transfer would be voidable as a preferential transfer under § 547.

The matter before me is Bergeron's motion for relief from the stay, not the Debtor's complaint to set aside the transfer to the sheriff. I therefore cannot now adjudicate the preference cause of action. I may nevertheless take into account the likelihood of the Debtor prevailing on a preference claim in considering whether Bergeron has shown sufficient cause to vacate the stay. *In re Shehu,* 128 B.R. 26 (Bankr.D.Conn.1991). The question of insolvency does not appear to be contested, and the Debtor is aided by a presumption of insolvency. The Debtor thus appears to have a sufficiently strong preference claim to vitiate any cause for vacating the stay.

A separate order has issued denying the motion.