Toomey, J.
Introduction
Plaintiff, Roy Charlette, filed this action in equity on March 12, 1993, seeking the appointment of a receiver to take charge of the corporate affairs and to assume custody of the corporate assets of Charlette Brothers Foundry, Inc. Plaintiff alleges that certain shares of Charlette Brothers Foundry, Inc. stock, which were voted at the July 11, 1991 shareholder meeting, should not have been voted because they had been “attached” by the probate court in a prior action. Accordingly, plaintiff concluded, equitable relief should be granted.
Plaintiff is now before the Court on his motion for partial summary judgment. Defendant opposes plaintiffs motion and requests that summary judgment be entered in its favor. For the reasons set forth below, plaintiffs motion for partial summary judgment is DENIED and defendant’s motion for summary judgment is ALLOWED.
BACKGROUND
The undisputed facts are as follows.[1] On June 6, 1989, a judgment of divorce nisi entered in the Worcester Division of The Probate and Family Court Department ordering that “the value of [Leo S. Charlette’s] stock certificate in Charlette’s Foundry [sic] shall be divided equally” between Carolyn A. Charlette (“Carolyn”) and Leo S. Charlette (“Leo”).[2] The absolute date on the judgment was September 5, 1989.
On December 28, 1990, Carolyn filed for a modification of the September 5, 1989 judgment, requesting that the court order the sale of Leo’s stock and that all proceeds from the sale be given to her for support of the children. On that same day, Carolyn also filed an “ex-parte motion for temporary order (on modification)” and a “motion for ex-parte approval of attachment on trustee process” in the amount of $20,000.00. In her motion for ex-parte approval of attachment on trustee process," Leo was named as defendant and Roy Charlette (“Roy”), Leo’s uncle and at that time president of Charlette Brothers Foundry, Inc. (“CBF”), was named as trustee. Carolyn argued that the forms of relief she sought were justified for reasons that Leo had not divided the value of the stock as ordered by the probate court on June 6, 1989 in its judgment of divorce nisi, CBF was preparing to distribute to Leo proceeds in the amount of approximately $20,000.00 from the sale of stock held by Leo, and Leo had not been paying his child support obligations.
The probate court refused to take action on Carolyn’s motion for a temporary order, having found it to be “not proper.” Carolyn’s motion for attachment was allowed, however, and on December 29, 1990, a “summons to trustee” was issued and served upon Roy, as president and treasurer of CBF, attaching the “goods, effects or credits” of Leo in the trustee’s possession to the value of $20,000.00.
Roy filed an “answer of trustee” on January 11, 1991. In his answer, Roy stated that he held ten shares of common stock in CBF belonging to Leo and that the value of the stock was $40,000.00. He also stated that CBF held a promissory note issued by Carolyn for $22,700.00 for money she borrowed from CBF. According to Roy the balance owed to Leo upon redemption of his shares of CBF stock was $17,300.00.
On July 11, 1991, at a special meeting of the shareholders of CBF, Ronald Charlette (“Ronald”), Roy’s nephew, voted, by proxy, Leo’s ten shares of CBF stock. Roy, who was the president and treasurer of CBF as well as trustee of the attachment, was present at the meeting and voted his thirty shares of CBF stock.[3] In addition to voting Leo’s ten shares, Ronald also voted his twenty shares and twenty shares belonging to David Charlette, Roy’s brother. Ronald thus voted a controlling block of fifty of the ninety outstanding shares of CBF stock. As a result of the shareholder vote, the by-laws of CBF were amended, the board of directors was reconstructed, Ronald, Earl[4] and Leo were named directors, the compensation for directors was established,[5] Roy was removed as president and treasurer and was made a vice-president, and Earl was elected president.[6]
On September 13, 1991, the probate court entered a modification judgment requiring Leo to “sell the shares of stock standing in his name in Charlette’s Foundary [sic] and the proceeds are to be given to the plaintiff for the benefit of the children.” The court ordered that, in all other respects, the June 6, 1989 judgment was to remain the same.
*674 DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community NatT Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party has the burden of affirmatively demonstrating the absence of a triable issue and that it is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). Where both parties have moved for summary judgment and “in essence there is no real dispute as to the salient facts or if only a question of law is involved,” summary judgment shall be granted to the party entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, supra
“In any proceeding before a probate court, an attachment may be made by injunction to reach shares of stock . . . which cannot be reached to be attached in a civil action in which money damages are sought, and the property so attached shall thereafter be subject to such order as justice and equity may require; and in relation to such probate proceedings said court shall have all the powers which the supreme judicial and superior courts have in relation to actions to reach and apply.” G.L.c. 215, §6A. Section 6A makes available, in proceedings already within equity jurisdiction and as incidental thereto, additional relief by equitable attachment which is not otherwise allowed. Green v. Old Colony Trust Co., 294 Mass. 601 (1936). After attachment, the attached property may be applied to the satisfaction of an order or judgment for support of a spouse or children. See G.L.c. 208, §13.
In its judgment of divorce nisi, issued on June 6,1989 and absolute on September 5, 1989, the Worcester Division of the Probate and Family Court ordered Leo to divide equally the value of his shares of CBF stock. Leo failed to comply with the probate court order, and on December 28, 1990, Carolyn was granted, ex-parte,[7] an attachment by trustee process in the sum of $20,000.00 on “the goods, effects or credits” of Leo’s in the hands of CBF. Roy, plaintiff in this action, was named trustee. Carolyn’s December 28, 1990 “motion for temporary order on modification” was deemed “not proper” and therefore was not acted upon by the probate court: nor was there any order entered limiting Leo’s power to vote his shares of CBF stock.
Plaintiff alleges that the attachment of the “goods, effects or credits” of Leo in the possession of CBF to the amount of $20,000.00 “froze” Leo’s interest in his ten shares of CBF stock and that the attachment precluded Leo from voting his “frozen” shares by proxy at the July 11, 1991, CBF stockholder meeting. Plaintiff concludes that the voting of the “attached” shares rendered the vote, and the changes that resulted therefrom, invalid, and compels the equitable relief now sought by Roy.
The motion for attachment on trustee process, which was allowed by endorsement on its margins, made no mention of Leo’s CBF stock. Likewise the “summons to trustee” purported to attach only the “goods, effects or credits” of Leo in the possession of the trustee, Roy. Corporate stock cannot be seized and sold on the execution; it is, therefore, not subject to ordinary legal process. G.L.c. 106, §8-3 17; Jordan v. Lavin, 319 Mass. 362, 367 (1946).
In the domestic relations context, both G.L.c. 215, §6A and G.L.c. 208, §13 provide a mechanism by which corporate stock can be reached. General Laws c. 215, §6A, encaptioned “Attachment by injunction,” provides that:
in any proceeding before a probate court, an attachment may be made by injunction to reach shares of stock or other property which cannot be reached to be attached in a civil action in which money damages are sought and the property so attached shall thereafter be subject to such order as justice and equity may require . . . (emphasis added).
Under G.L.c. 208, §13:
(t]he attachment may be made upon the summons issued upon the action, in the same manner as attachments are made upon writs in actions at law, for an amount which shall be expressed in the summons or order of notice. The attachment maybe made by the trustee process, in which case there shall be inserted in the summons or order of notice a direction to attach the goods, effects and credits of the defendant in the hands of the alleged trustee, and service shall be made upon the trustee by copy. If attachment is made by trustee process, the action shall be filed as provided in section six notwithstanding the provisions of section two of chapter two hundred and forty-six. The court may in such cases make all necessary orders to secure to the trustee his costs. The attachment may be made by injunction, as in suits in equity, to reach shares of stock or other property which cannot be reached to be attached as in an action at law, and the property so attached may thereafter by appropriate order, be applied to the satisfaction of any order or decree for the payment of money by one spouse to the other for his support and maintenance or that of the children. (Emphasis added.)
In the case at bar, no injunction regarding Leo’s CBF stock issued until September 13, 1991. Had the probate court seen fit, it could have entered orders, beyond the bare attachment by trustee process of $20,000.00, to reach, with unambiguous particularity, Leo’s share of CBF stock. The probate court did not, however, enter such an order until September 13, 1991, two months after the shareholder vote took place. On September 13, 1991, the probate court entered a modification judgment ordering Leo to sell his shares of CBF stock. Prior to that date, the court had refused to act upon Carolyn’s December 28, 1990 motion for a temporary order to force the sale of the stock, having found the motion to be improper.
*675 This Court finds that the attachment by trustee process for $20,000.00, did not, without more, operate to attach Leo’s shares of CBF stock. Accordingly, nothing prevented Leo from voting his shares by proxy at the July 11,1991 shareholders meeting.[8] Plaintiff cannot, therefore, prevail upon his assertion that the vote was unlawful or upon his prayer that equitable relief be granted.
ORDER
For the foregoing reasons, plaintiff Roy Charlette’s motion for partial summary judgment is DENIED. Defendant Charlette Brothers Foundry Inc.’s motion for summary judgment is ALLOWED.

At the hearing on their respective motions for summary judgment the parties agreed that there were no genuine issues of material fact and that the matter may be decided solely on the questions of law raised by the motions.

Because all of the parties are related and share the same last name, the court will refer to them by first name. No disrespect is intended by the use of this simplifying reference.

He did not contest the validity of the proxy vote of Leo’s shares at that time.

 Earl is Roy’s son.

Leo was to receive $2,000 annually. Ronald and Earl received no compensation.

The only vote which was decided by a ten or less share margin was to amend the by-laws. All other votes passed with at least a twenty-share margin. Thus, only in one instance was the voting of Leo’s shares outcome determinative.

An attachment by trustee process may be made ex-parte for a specific amount if the court finds that there is a clear danger that the defendant will withdraw his property from the possession of the trustee or convey, remove or conceal the property if given advance notice of the attachment. Mass.RDom.Rel.P. 4.2(g).

It should be noted that even assuming, arguendo, that the attachment by trustee process reached Leo’s stock, the attachment, without more, would not encumber his right to vote his shares. The effect of an attachment is to create a lien on the property attached. See e.g., McCarthy v. Rogers, 295 Mass. 245 (1936). Haskell C. Freedman, Massachusetts Family Law Manual §9-4 (1986). The attached property may still be used by the owner even though the party who has obtained the attachment has the right to levy execution on the property to satisfy his or her claim. Massachusetts Family Law Manual, Vol. I, 39-5 (MCLE 1994).